IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Charles Dombek, Justin T. Foxx, The Optimal Insurance Group, Paul Cassano & Paul LoPiccolo, | ) ) ) ) | Civil Action No. 2:18-cv-391-RMG |
| Plaintiffs, | ) ) ) | **ORDER AND OPINION** |
| v. | ) ) | |
| F. Miles Adler, | ) ) | |
| Defendant. | ) ) | |

This matter is before the Court on the Motion to Dismiss Counterclaims (Dkt. No. 32) by Plaintiffs Charles Dombek, Justin T. Foxx, The Optimal Insurance Group, Paul Cassano, and Paul LoPiccolo (collectively, "Plaintiffs"). For the reasons set forth below, the Court grants in part and denies the motion.

### I. Background

Plaintiffs assert claims for breach of fiduciary duty, legal malpractice, negligence, and unfair trade practices against Defendant F. Miles Adler regarding a gold-investment scheme. (Dkt. No. 22.) The operative First Amended Complaint alleges, generally, that the Plaintiffs invested hundreds of thousands of dollars in a venture to export freshly mined gold ingots from the Democratic Republic of Congo through an attorney in Nairobi, Kenya. (Dkt. No. 22 at ¶¶ 22 – 25.) Adler allegedly represented that he would serve as legal counsel for the enterprise and any risk of loss would be covered by his insurance. (*Id.*) However, the plan fell apart and the gold shipment was ultimately seized and retained by the sellers even after the Plaintiffs paid hundreds of thousands of dollars to secure its release. (*Id.* at ¶¶ 30 – 31.) The Plaintiffs allege that Adler

failed to do basic due diligence on the sellers, failed to set up appropriate legal instruments to protect their investments, and paid himself for his work in the scheme. (*Id.* at 33 – 40.)

Defendant Adler denies any misconduct or liability related to the gold investments. (Dkt. No. 30.) Additionally, Adler brings ten counterclaims against the Plaintiffs for their alleged roles in the failed scheme. Specifically, Adler alleges that he and Plaintiffs Dombek and Cassano entered into a partnership, and therefore they are all jointly and severally liable for any claims against the partnership. (Dkt. No. 30 at ¶ 95.) Based on this allegation, Adler brings the following counterclaims: declaratory judgment, defamation, breach of contract, breach of fiduciary duty, promissory estoppel, breach of good faith and fair dealing, negligent misrepresentation, misappropriation of partnership opportunities, quantum meruit, and complete set off. (Dkt. No. 30 at 14 – 21.) Plaintiffs now seek to dismiss all of Adler's counterclaims, and Adler opposes the motion.[1] (Dkt. Nos. 32, 36.)

## II. <u>Legal Standard</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses.... Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (quotation marks

---

[1] Plaintiffs represented that Plaintiff Dombek and Defendant Adler have reached an agreement to resolve their claims against each other. (Dkt. No. 39 at 1.) Plaintiffs stated that that the agreement would be completed within four weeks of the date of that filing, December 26, 2018. (*Id.*) However, as of the date of this order over four weeks after December 26th, the Court has not been informed of any settlement on the claims between Dombek and Adler and none of those claims have been dismissed. Therefore, the Court proceeds to consider the merits of the motion as to all Plaintiffs.

and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. Discussion

As a preliminary matter, Defendant Adler has withdrawn his counterclaims for quantum meruit and for a complete set-off. (Dkt. No. 36 at 1, 15.) Therefore, Plaintiffs' motion to dismiss as to the claims for quantum meruit (Ninth Counterclaim) and complete set-off (Tenth Counterclaim) is granted. The Court discusses the other counterclaims in order:

#### A. First Counterclaim: Declaratory Judgment

Adler seeks a declaratory judgment under S.C. Code § 15-53-10 *et seq.* that Adler and Plaintiffs Dombek and Cassano entered into a partnership, rather than some other form of relationship. South Carolina's declaratory judgment law makes clear that, "[t]he court may refuse to render or enter a declaratory judgment or decree when such judgment or decree, if rendered or

entered, would not terminate the uncertainty or controversy giving rise to the proceeding." S.C. Code Ann. § 15-53-70. *See Pee Dee Elec. Co-op., Inc. v. Carolina Power & Light Co.*, 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983) (affirming dismissal of action where declaratory judgment would not have terminated the controversy underlying the proceedings). Here, a declaration would not resolve or terminate the controversy in the proceedings. An attorney-client relationship can exist regardless of whether the attorney also has a separate business relationship with the client. *See Ellis v. Davidson*, 358 S.C. 509, 523, 595 S.E.2d 817, 824 (Ct. App. 2004) (reversing grant of summary judgment on legal malpractice claim where attorney and client also formed corporation); *Matter of Conway*, 305 S.C. 388, 392, 409 S.E.2d 357, 359 (1991) ("An attorney who enters into business with his client does not…shed his professional standing and obligation, and there is no just reason why he should be permitted to do so."). Regardless of the determination of the declaratory judgment, Plaintiffs claims, including for legal malpractice, and many of Adler's counterclaims would be unaffected and therefore declaratory judgment is inappropriate here. Furthermore, as discussed below, Adler also fails to allege that a partnership existed, and therefore his request for a declaratory judgment of a partnership is subject to dismissal. Therefore, Adler's first counterclaim for a declaratory judgment is dismissed.

### B. Second Counterclaim: Defamation *Per Se*

The elements of defamation are: "1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *McNeil v. S.C. Dep't of Corr.*, 404 S.C. 186, 195, 743 S.E.2d 843, 848 (Ct. App. 2013). Adler's counterclaim is nothing more than a recitation of these elements. Importantly, regarding the allegedly defamatory statement, Adler merely states that "on multiple occasions,"

including in an email dated "19 September 2015" the Plaintiffs "publish[ed] unprivileged statements alleging that Adler engaged in crimes of moral turpitude and acted in a manner unfit for Adler's lawful business or profession." (Dkt. No. 30 at ¶ 115.) Adler argues that the inclusion of "crime of moral turpitude" and "unfit in his profession" suffice to make out a claim for defamation *per se*. (Dkt. No. 36 at 7.) However, those statements are nothing more than a recitation of one form of defamation, slander *per se*. *See Murray v. Holnam, Inc.*, 344 S.C. 129, 142, 542 S.E.2d 743, 749 (Ct. App. 2001) ("Slander is actionable *per se* if it charges the plaintiff with...: (1) commission of a crime of moral turpitude; ...; or (5) unfitness in one's business or profession."). The counterclaim includes no other details regarding the allegedly defamatory statements. Adler's second counterclaim for defamation *per se* therefore lacks the specificity required to make out a claim for defamation and is dismissed. *See McNeil*, 404 S.C. at 195 (upholding dismissal of defamation claim where claim in part, "did not set forth with any specificity what the alleged false statements were.").

### C. Third Counterclaim: Breach of Contract

"The elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach." *Branche Builders, Inc. v. Coggins*, 386 S.C. 43, 48, 686 S.E.2d 200, 202 (Ct. App. 2009). Adler alleges that a contract was entered on June 16, 2015, when Plaintiff Cassano signed a letter titled a "Letter of Understanding on Plan Africa/Diamond Business Model...." (Dkt. No. 30-1.) The document is attached as an exhibit to the counterclaim. (*Id.*) The document begins by stating that "[p]ursuant to our phone conversations," the letter is a "confirmation of [Cassano's] admission as a partner in our commercial venture" for trading commodities in East Africa. (*Id.*) The letter goes on to state that Cassano's "rights and obligations as a partner will be equal to [Adler's] rights and obligations" though it notes that Adler is

"assuming" liability "as attorney and promoter of the deal." (*Id.*) The letter then switches to future tense, stating that the once the partnership "establishes a track record of success we will formalize the relationships of the principles under a hybrid domestic trust structure…." (*Id.*) The letter goes on to explain what rights and duties Cassano will have "[u]nder that structure." (*Id.*) Yet, the letter then states that Cassano's "functional responsibilities will include" a variety of obligations, including "raising capital" and "identifying suitable trading partners." (Dkt. No. 30 at ¶ 126.)

Adler argues the letter formed a contract between himself and Plaintiff Cassano, and that Cassano breached the contract by failing to follow through on his obligations listed in the letter and by failing to fulfill promises he made that are not reflected in the letter, such as raising "an additional $250,000" in capital. (Dkt. No. 30 at ¶ 126.) Plaintiffs argue the letter did not create a contract and any obligations only attached once the parties created the "hybrid domestic trust structure." (Dkt. No. 32-1 at 11.) Further, Plaintiffs argue that any duty to raise $250,000 is not referenced in the contract and therefore is excluded as parol evidence.

The letter, however, is ambiguous. "An ambiguous contract is one that can be understood in more ways than just one or is unclear because it expresses its purpose in an indefinite manner." *Plantation A.D., LLC v. Gerald Builders of Conway, Inc.*, 386 S.C. 198, 205, 687 S.E.2d 714, 718 (Ct. App. 2009). It is clear that some agreement was reached by this letter, as it speaks of Cassano's "rights and obligations as a partner." However, the extent of those obligations is unclear. Specifically, while the letter speaks of certain "rights and managerial responsibilities" only attaching after the "hybrid domestic trust" is set up, it is unclear whether that applies to all "functional responsibilities" listed elsewhere in the letter. (Dkt. No. 30-1.) The letter is further complicated by its reference to "phone conversations," which indicates that the ambiguity may be clarified by external evidence. (*Id.*) Therefore, parol evidence may be admissible because of the

ambiguities in the letter. *See Parr v. Parr*, 268 S.C. 58, 64, 231 S.E.2d 695, 697 (1977) ("When the written evidence of the contract does not contain all the terms of the transaction between the parties, parol evidence (not contradicting or varying the writing) is admissible for the purpose of showing a contemporaneous independent agreement entered into between the parties.") (citations omitted). *See also Plantation A.D., LLC*, 386 S.C. at 206 ("if a contract is ambiguous, parol evidence is admissible to ascertain the true meaning of the contract and the intent of the parties.").

Therefore, at the motion to dismiss stage, Adler has pled that Cassano accepted Adler's offer based on mutual consideration and that the terms of that agreement were ultimately breached.

### D. Fourth Counterclaim: Breach of Fiduciary Duty

Adler's alleges that Plaintiffs Dombek and Cassano breached their fiduciary duty as members of a partnership. "To establish a claim for breach of fiduciary duty, the plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant." *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 335–36, 732 S.E.2d 166, 173 (2012) (citations omitted).

Adler alleges the fiduciary duty arises from an alleged partnership. (Dkt. No. 36 at 9 – 10.) It is well settled that partners owe each other a fiduciary duty. *See Moore v. Moore*, 360 S.C. 241, 251, 599 S.E.2d 467, 472 (Ct. App. 2004) ("Partners are fiduciaries to each other and their relationship is one of mutual trust and confidence...."). Traditionally, to prove a partnership, a party must show "(1) the sharing of profits and losses; (2) community of interest in capital or property; and (3) community of interest in control and management." *Id.* at 260. However, unlike a contract, "[a] partnership agreement may rest in parol. It may be implied and without express intention." *Id.* Adler, however, fails to allege that Dombek or Cassano intended to share in profits

or losses. Indeed, everything in the letter indicates that liability would be limited. While the letter states that the "rights and obligations" of Cassano will be the same as Adler's, it explicitly carves out liabilities, stating that their rights are "equal in all respects...*with the sole exception of the liability* I [Adler] am assuming as attorney and promoter of the deal." (Dkt. No. 30-1.) Further, even when discussing a future business structure, it states that the governance will be set up only as a "limited partnership." (Dkt. No. 30-1.) The Complaint does not cure this deficiency, and instead only conclusorily states that "Cassano and Dombek...agreed to be held joint and severally liable" for the partnership without any supporting allegations. (Dkt. No. 30 at ¶ 95.) The Complaint therefore fails to allege that Adler, Dombek and Cassano agreed to share in profits and losses, and instead the documents included with the counterclaims state the exact opposite, that Adler specifically represented either he would assume the liability or the Plaintiffs' liability would be limited. Adler relies on the fact that both the letter and email refer to a "partnership" between Adler, Dombek and Cassano. (Dkt. Nos. 30-1; 30-2.) However, the mere use of the term "partner" in the colloquial sense does not suffice to allege a partnership. *See Message Sys., Inc. v. Integrated Broadband Servs.*, LLC, No. CCB-09-2122, 2010 WL 2891706, at *5 (D. Md. July 20, 2010) (holding the Court could not "reasonably infer" a partnership existed where only evidence was "use of the word 'partner' in a general sense"). *See also T.G. Plastics Trading Co. Inc. v. Toray Plastics (Am.), Inc.*, 958 F. Supp. 2d 315, 327 (D.R.I. 2013) ("Use of the word "partner" in the colloquial sense does not establish a legal partnership.") *citing Southex Exhibitions, Inc. v. Rhode Island Builders Ass'n., Inc.*, 279 F.3d 94, 101 – 102 (1st Cir. 2002). This use of the phrase "partner" cannot overcome Adler's failure to plausibly allege that the parties agreed to share in profits and losses. Adler therefore failed to allege a partnership.

Therefore, since Adler failed to allege a partnership, he failed to allege a fiduciary duty and his claim for breach of fiduciary duty is dismissed.

### E. Fifth Counterclaim: Promissory Estoppel

Adler identifies five alleged promises that Dombek and Cassano made:

- that Dombek and Cassano would perform under the terms of the Partnership;

- that Dombek and Cassano would fund their share of the start-up costs and subsequent operating costs for the Partnership;

- that Dombek and Cassano would actively participate in management of the Partnership;

- that Dombek and Cassano would work to constructively support the objectives of the Partnership and not take affirmative steps to disrupt operations; and

- that Dombek and Cassano intended to partner with Adler in the development of a precious stones, precious metals, and commodities trading business as that term is defined under the South Carolina Uniform Partnership Act.

(Dkt. No. 30 at ¶ 137.) Of principal importance in claims for promissory estoppel, "the promise to be enforced must be unambiguous with clearly articulated, definite terms, while the sustained injury must result from an inconsistent disposition by the promisor." *Barnes v. Johnson*, 402 S.C. 458, 470, 742 S.E.2d 6, 11 (Ct. App. 2013). The promises at issue here are ambiguous. To begin with, the first three promises relate to a partnership that Adler has not alleged existed. Regardless, phrases such as "the terms," "their share," "actively participate," and "constructively support," do not indicate a "promise unambiguous in its terms." *See Barnes*, 402 S.C. at 471. It is entirely unclear what any of these terms would require. Furthermore, the final alleged promise does not even indicate a promise, and instead simply states a future hope, namely, that the Parties "intended to partner." Therefore, none of these "clearly articulate the terms" of an alleged oral agreement. *Id.* Indeed, South Carolina courts have found even more definitive agreements fail to make out a claim for promissory estoppel. *See Id.* at 472 (holding that trial court erred in finding promissory

estoppel where it was alleged that "Johnson would sell the property to Barnes subsequent to Barnes first procuring his own financing..." but failed to include information on how the capital would be treated or how parties would "settle up"); *PTA-FLA, Inc. v. ZTE Corp.*, No. 3:12-CV-02616-CMC, 2015 WL 13593694, at *20 (D.S.C. July 27, 2015), *aff'd*, 715 F. App'x 237 (4th Cir. 2017) (dismissing promissory estoppel claim as it was ambiguous regarding to whom the promise was made). Here, the allegations are entirely unclear as to when the promise was made, to whom the promise was made, or the terms of each of the promises. Therefore, Adler's claim for promissory estoppel is dismissed.

### F. Sixth Counterclaim: Breach of Good Faith and Fair Dealing

It is well settled under South Carolina law that "the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract." *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 359 S.C. 467, 473, 597 S.E.2d 881, 884 (Ct. App. 2004). Furthermore, Adler failed to include any details or factual allegations to support his claim for a breach of good faith and fair dealing, and the counterclaim includes only a formulaic recitation of the purported cause of action. (Dkt. No. 30 at ¶¶ 141 – 143.) Therefore, Adler's sixth counterclaim is dismissed.

### G. Seventh Counterclaim: Negligent Misrepresentation

To establish a claim for negligent misrepresentation, a party must show: "(1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary

loss as the proximate result of his reliance upon the representation." *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 407, 581 S.E.2d 161, 166 (2003).

Adler does not allege any false representation. Instead, Adler alleges that the negligent misrepresentation was Plaintiffs' failure to disclose that Plaintiff Dombek was "Foxx's CFO" and that Plaintiff Cassano was "taking ½ of [Plaintiff] LoPiccolo's profit rights in the Partnership." (Dkt. No. 30 at ¶ 148.) "Under South Carolina law, the '[s]uppression of a material fact which one is duty bound to disclose is equivalent to a false []representation.'" *Lampman v. DeWolff Boberg & Assocs., Inc.*, 319 F. App'x 293, 299 (4th Cir. 2009) *citing Landvest Assocs. v. Owens*, 276 S.C. 22, 274 S.E.2d 433, 434 (1981). Adler does not allege any such material fact that Plaintiffs had a duty to disclose. To begin with, both the counterclaim itself, referencing "rights in the [p]artnership," and Adler's response make clear that this claim relies on the "allegations of a partnership" giving rise "to a fiduciary duty." (Dkt. Nos. 30 at ¶ 148; 36 at 15.) However, as discussed above, Adler did not allege that a partnership existed here, and therefore there was no duty to disclose to whom Dombek or Cassano assigned their profits.[2] Further, Adler identified no caselaw or statutes indicating that Dombek had a duty to disclose that he is Plaintiff Foxx's CFO, and the Court has similarly been unable to find any caselaw or statute, based on the facts alleged here, that would have required Dombek to disclose that he is Plaintiff Foxx's CFO.

Adler's other allegations, alleging that Plaintiffs agreed to "perform" pursuant to the partnership agreement and "interefer[ed] directly with Adler['s]...execution of his duties within ...the [p]artnership" similarly fail. First, as the Court already held, Adler failed to allege that a

---

[2] Indeed, the letter even seems to acknowledge that Cassano may assign profits to a third party, stating that Cassano may "assign any compensation you receive to the limited liability entity of your choice." (Dkt. No. 30-1.) The only limit in the letter was that Cassano needed to "personally accept" the offer. Adler's allegation only deals with the assignment of profits. (Dkt. No. 30 at ¶ 148.)

partnership existed. Further, these claims are simply a bare allegations and do not allege any facts on which the Court can determine that the claim is plausible. Therefore, since Adler failed to allege any material omission, Adler's claim for negligent misrepresentation is dismissed.

### H. Eighth Counterclaim: Misappropriation of Partnership Opportunities

Adler's allegation of misappropriation is largely a non-specific recitation of the cause of action. However, Adler does allege with specificity that Plaintiff Dombek misappropriated his supply chain of sourcing gold from Dubai for sale in Amsterdam. (Dkt. No. ¶ 154.) This claim fails for the same reasons discussed above. Adler here failed to allege that a partnership, or some other fiduciary relationship, has ever existed. The claim, regardless of whether it is for misappropriation of corporate opportunities or of partnership opportunities, requires a fiduciary relationship. *See Pittman v. Grand Strand Entm't, Inc.*, 363 S.C. 531, 537, 611 S.E.2d 922, 925 (2005) (upholding summary judgment on claim for misappropriation of corporate opportunity where there was no showing that a fiduciary duty was owed); *Redwend Ltd. Pship v. Edwards*, 354 S.C. 459, 478, 581 S.E.2d 496, 506 (Ct. App. 2003) (finding claim for misappropriation of partnership opportunity survived summary judgment based on fiduciary duty owed in partnership). Here, as discussed above, Adler cannot allege that a partnership existed and has not alleged any other relationship giving rise to a fiduciary duty. Therefore, Adler cannot make out a claim for misappropriation of partnership opportunities.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion to Dismiss (Dkt. No. 32.) The Motion to Dismiss is **DENIED** as to Adler's Third Counterclaim for Breach of Contract. The Motion to Dismiss is otherwise

**GRANTED**, and Adler's First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Tenth Counterclaims are **DISMISSED**.

**AND IT IS SO ORDERED.**

Richard M. Gergel
United States District Court Judge

February 5, 2019
Charleston, South Carolina